# UNITED STATES DISTRCT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CARLOS SANTOS, ) | |
| ) | |
| Petitioner, ) | |
| ) | Case No. 15 C 5325 |
| v. ) | Hon. Marvin E. Aspen |
| ) | |
| TARRY WILLIAMS, Warden, ) | |
| Stateville Correctional Center, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Presently before us is Respondent's motion for reconsideration of our December 2, 2016 Order requiring an evidentiary hearing on Petitioner Carlos Santos' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Dkt. No. 42.) For the reasons set forth below, we grant in part and deny in part the motion for reconsideration.

## BACKGROUND

We assume familiarity with the relevant facts as detailed in our December 2, 2016 Order and thus do not fully recount them here. *Santos v. Williams*, No. 15 C 5325, 2016 WL 7077104 (N.D. Ill. Dec. 2, 2016). Santos filed his § 2254 petition on June 16, 2015 challenging his felony first degree murder and discharge of a firearm convictions in Illinois state court. He asserted two claims: (1) the state violated his Fifth, Sixth, and Fourteenth Amendment rights when the trial judge communicated *ex parte* with the deliberating jury, provided them a dictionary, and failed to ascertain what the jury used it for after it was removed; and (2) the state violated his right to due process by failing to disclose material evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963). *Id.* at *2. We denied Santos' second claim, but determined

he was entitled to an evidentiary hearing on his first claim to determine whether and to what extent the *ex parte* communication and jury use of the dictionary caused prejudice to Santos. *Id.* at *10. We appointed counsel to represent Santos at the hearing and referred the matter to the Magistrate Judge to conduct the evidentiary hearing and file a Report and Recommendation. *Id.* On February 10, 2017, Respondent filed the instant motion for reconsideration to which Santos, now represented by counsel, responded.

## LEGAL STANDARD

Federal Rule of Civil Procedure 54(b) provides that a court may alter or amend an interlocutory order any time before entry of judgment. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12, 103 S. Ct. 927, 935 (1983). ("[E]very order short of a final decree is subject to reopening at the discretion of the district judge."); *Mintz v. Caterpillar Inc.*, 788 F.3d 673, 679 (7th Cir. 2015) (courts have discretion to reconsider an interlocutory order at any time prior to final judgment). Motions to reconsider interlocutory orders "serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996) (quoting *Keene Corp. v. Int'l Fidelity Ins. Co.*, 561 F. Supp. 656, 665 (N.D. Ill. 1982)). "A manifest error is not demonstrated by the disappointment of the losing party. It is the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (internal citations omitted). We may also "reconsider a prior decision when there has been a significant change in the law or facts since the parties presented the issue to the court, when the court misunderstands a party's arguments, or when the court overreaches by deciding an issue not properly before it." *United States v. Ligas*, 549 F.3d 497, 501 (7th Cir. 2008). While motions to reconsider are

permitted, "they are disfavored." *Patrick v. City of Chi.*, 103 F. Supp. 3d 907, 911 (N.D. Ill. 2015) (finding the party bringing a motion for reconsideration "bears a heavy burden, and motions for reconsideration are not at the disposal of parties who want to rehash old arguments"); *see also Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (observing motions to reconsider should be rare as the circumstances permitting relief rarely arise).

**ANALYSIS**

Respondent's motion for reconsideration raises several issues. First, Respondent argues that to the extent our December 2, 2016 Order relied on *Remmer v. United States*, 347 U.S. 227, 74 S. Ct. 450 (1954) in determining Santos was entitled to an evidentiary hearing, Respondent justifiably "had not discerned a *Remmer* claim in the habeas petition" and consequently did not discuss the issue in answering the petition. (Mot. for Reconsideration ("Mot.") (Dkt. No. 42) at 6). Second, Respondent argues that Santos procedurally defaulted a *Remmer* claim by failing to seek a hearing in state court. (*Id.* at 7–10.) Third, default aside, Respondent contends that Santos' claim is barred and he is not entitled to an evidentiary hearing under 28 U.S.C. § 2254(e) because he failed to adequately build a record in state court. (*Id.* at 10–11.) Fourth, Respondent asserts that to the extent the December 2, 2016 Order establishes a new retroactive rule of procedure on collateral appeal, it is improper under *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060 (1989). (*Id.* at 11–12.) Finally, in the alternative, Respondent contends that to the extent an evidentiary hearing is required, we should clarify the burden of proof to be applied. (*Id.* at 12–13.)

## I. PROCEDURAL DEFAULT

Respondent first argues that reconsideration is appropriate here because our liberal interpretation of Santos' petition "brought to the parties' attention an important issue that was not previously apparent to them," namely, a "potential claim under *Remmer v. United States*, 347 U.S. 227 (1954), that respondent understandably did not see in the petition." (Reply Br. (Dkt. No. 55) at 3.) Respondent's answer did not discuss *Remmer*, but he argues we should excuse this potential waiver and now consider an argument that Santos procedurally defaulted "any claim that the state courts failed to afford petitioner a *Remmer* hearing (or apply a *Remmer* presumption at such a hearing)." (Mot. at 7.)

Our December 2, 2016 Order set forth three issues raised by Santos' petition:

> (1) whether the *ex parte* communication between the judge and jury violated Santos' constitutional rights to counsel and to be present at all critical stages of the proceedings; (2) whether his constitutional rights were violated by allowing the jury to consider information outside the evidence presented at trial and apart from their own beliefs and experiences; and (3) whether the alleged errors caused actual prejudice.

*Santos*, 2016 WL 7077104, at *4. Respondent's motion does not appear to take issue with our decision on either of the first two issues. Rather, he contends we erred in finding an evidentiary hearing was necessary to determine whether the violation of Santos' constitutional rights caused prejudice.

The Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment provide defendants the right to be present at all critical stages of criminal proceedings. *Illinois v. Allen*, 397 U.S. 337, 338, 90 S. Ct. 1057, 1058 (1970); *United States v. Gagnon*, 470 U.S. 522, 526, 105 S. Ct. 1482, 1484 (1985); *Moore v. Knight*, 368 F.3d 936, 940 (7th Cir. 2004). Likewise, the Sixth and Fourteenth Amendments protect a defendant's right to an impartial jury, one free of external influences affecting the jury's

deliberations. *Parker v. Gladden*, 385 U.S. 363, 364–65, 87 S. Ct. 468, 470–71 (1966); *Turner v. Louisiana*, 379 U.S. 466, 472, 85 S. Ct. 546, 549 (1965); *Oswald v. Bertrand*, 374 F.3d 475, 477 (7th Cir. 2004). The Supreme Court "has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." *Smith v. Phillips*, 455 U.S. 209, 215, 102 S. Ct. 940, 945 (1982). However, *ex parte* communications or extraneous influences on a jury's deliberations will only violate a defendant's rights where such intrusions caused prejudice to the defendant, meaning the intrusion affected the jury's deliberations and thereby its verdict. *See United States v. Olano*, 507 U.S. 725, 739, 113 S. Ct. 1770, 1780 (1993); *Phillips*, 455 U.S. at 217, 102 S. Ct. at 946; *Gagnon*, 470 U.S. at 526, 105 S. Ct. at 1484. Thus, due process requires the trial judge "to determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial." *Remmer*, 347 U.S. at 230, 74 S. Ct. at 451; *see also Phillips*, 455 U.S. at 217, 102 S. Ct. at 946 ("Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen. Such determinations may properly be made at a hearing like that ordered in *Remmer*.").

Santos' petition adequately stated his claim and was sufficient to alert Respondent of the relevant issues. Santos' petition stated:

> Under the Fifth, Sixth and Fourteenth Amendment Right of the United States Constitution as well as Rule 43 of the Federal Rules of Criminal Procedure and/or the State of Illinois Constitution 1970 Article I Sec. 8, all criminal defendants have the right to due process, the right to assistance of counsel as well as the right to be present in the courtroom during trial.
>
> An ex parte communication between the judge and the jury after the jury has retired to deliberate, except one held in open court and in the Petitioner's presence, violates Petitioner's constitutional right to be present. Petitioner was further prejudiced by the abuse of discretion from the trial judge['s] ex parte communication with the jury

5

> when he failed to determine what word(s) or legal term(s) the jury sought to define, and failed to clarify what the exact question or questions the jury had. It is reasonable to assume that the jury sought clarification on legal terms that influenced its guilt or innocence determination. It is also reasonable to assume that the jury may have used the Webster's Dictionary to construct its own definition of legal terms that do not accurately or fairly reflect applicable law.

(Pet. at 11–12.) Santos' petition further asserted:

> Had Petitioner been allow[ed] the opportunity to participate and be present at this critical stage of his trial, he would had [sic] objected to the introduction of the Webster's Dictionary and ask[ed] the trial judge to clarif[y] the nature of the jury's specific question or questions, but since [sic] the judge did not allow Petitioner this opportunity until after the introduction of the dictionary on the next day, when Petitioner's defense Attorney requested that the dictionary not be given to the jury when it resumed its deliberations. And since the trial judge failed to clarify the jury's confusion and potentially allowed the jury to apply the law incorrectly, therefore Petitioner's Constitutional Rights were violated and was prejudiced by the abuse of discretion of the trial judge's error.

(*Id.* at 12–13.) In his reply brief in support of his petition, Santos also argued "it is a fundamental principle that the trial court has an obligation to seek clarification of the jury's confusion if their question is unclear, and to then attempt to clarify the matter of law in which the jury has become confused" and that he "was prejudiced by the trial court when [the court] failed to ascertain what word or words the jury sought to define, which resulted in the reasonable possibility that the jurors used the dictionary to construct its own definition of legal terms that do not accurately or fairly reflect the applicable law." (Reply Br. (Dkt. No. 33) at 2–3.) Santos specifically argued in reply that the trial judge had a duty to determine "whether the jury actually substituted the dictionary definition of a legal term for that given in the [jury] instructions" and if so, whether such use of the dictionary resulted in prejudice Santos. (*Id.* at 7.) Likewise, Santos again set forth the constitutional rights he argued the state court ignored:

> (A) his right to a public trial, (B) his right to counsel at "a critical stage of the proceedings," (C) his right to appear and participate in person and by counsel at all proceedings that involve his substantial rights, (D) the trial court's duty to clarify the jury's confusion, (E) and whether the use of the Webster's Dictionary, the trial

> court's ex parte communication and/or the petitioner's absence at "a critical stage of the trial" resulted in prejudice to the petitioner.

(*Id.* at 4.)

"In determining whether a claim has been fairly presented, we liberally construe pro se petitions." *Ward v. Jenkins*, 613 F.3d 692, 697 (7th Cir. 2010) (citing *Johnson v. Hulett*, 574 F.3d 428, 433 (7th Cir. 2009)). Read liberally, Santos' pro se petition set forth a claim that the *ex parte* communication with the jury and the jury's consideration of extraneous information violated his rights under the Fifth, Sixth, and Fourteenth Amendments, and he was prejudiced by the state courts' failure to inquire as to why and how the jury used the dictionary. Moreover, insofar as Respondent suggests Santos did not make clear until his reply brief his contention that the state courts failed to inquire as to whether the intrusion on the jury's deliberations caused prejudice, (Mot. at 6), Respondent could have moved at that time to strike or to file a surreply.

Respondent has accordingly forfeited the procedural default defense he now raises for the first time on reconsideration. *Trest v. Cain,* 522 U.S. 87, 89, 118 S. Ct. 478, 480 (1997) ("[P]rocedural default is normally a defense that the State is obligated to raise and preserv[e] if it is not to lose the right to assert the defense thereafter." (internal quotations omitted)). Respondent has not raised a manifest error of law or presented newly discovered evidence excusing his failure to raise the defense before we issued a decision on Santos' motion. *See, e.g.*, *Caisse Nationale de Credit Agricole*, 90 F.3d at 1269. In any event, we are unconvinced the defense would be successful on the merits.

To avoid procedural default, a state prisoner must "exhaust the remedies available in the courts of the State . . . by giving the state courts an opportunity to act on his claims." *Thomas v. Williams*, 822 F.3d 378, 384 (7th Cir. 2016) (internal citations and quotations omitted). In doing so, a petitioner must "fairly present[] . . . in concrete, practical terms" the

7

federal claim such that "the state court was sufficiently alerted to the federal constitutional nature of the issue to permit it to resolve that issue on a federal basis." *Ellsworth v. Levenhagen*, 248 F.3d 634, 639 (7th Cir. 2001) (quoting *Kurzawa v. Jordan*, 146 F.3d 435, 442 (7th Cir. 1998)); *accord. Perruquet v. Briley*, 390 F.3d 505, 519 (7th Cir. 2004) ("[H]e must, in some manner, alert the state courts to the federal underpinnings of his claim."). To determine whether a constitutional issue has been fairly presented, we consider four factors: 1) whether the petitioner relied on federal cases that engage in a constitutional analysis; 2) whether the petitioner relied on state cases that apply a constitutional analysis to similar facts; 3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and 4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation. *Ward*, 613 F.3d at 696 (quoting *Ellsworth*, 248 F.3d at 639); *see also Sweeney v. Carter*, 361 F.3d 327, 332 (7th Cir. 2004); *Wilson v. Briley*, 243 F.3d 325, 327 (7th Cir. 2001).

At each level of state court review, Santos raised his claim that his Sixth and Fourteenth Amendment rights were violated when the judge provided a dictionary to the jury without the defense's knowledge or consultation, without providing him an opportunity to respond, and by failing to "clarify the reason why the jury wanted a dictionary in the first place" or what words they may have looked up. (Direct App. Br. (Dkt. No. 18–3) at 37–42; Direct App. Reply (Dkt. No. 18–5) at 6–9; Pet. for Rehrg. (Dkt. No. 18–6) at 1–5; PLA (Dkt. No. 18–8) at 3–4, 7–11.) He consistently asserted the state failed to meet its burden of establishing the interference with the jury's deliberations caused no prejudice to him, because the trial court "failed to ascertain what word or words the jury sought to define, which resulted in the reasonable possibility that the jurors used the dictionary to construct its own definitions of legal

8

terms that might not accurately or fairly reflect the applicable law." (*See* Direct App. Br. at 37 (citing *People v. Mitchell*, 152 Ill. 2d 274, 341, 604 N.E.2d 877, 910 (1992)).) Santos relied on state cases that apply a constitutional analysis, including *Mitchell*, which set forth "well settled" principles governing "extra-record communication with jurors," including that "any communication with a juror during trial about a matter pending before the jury is deemed presumptively prejudicial to a defendant's right to a fair trial. Although this presumption of prejudice is not conclusive, the burden rests upon the State to establish that such contact with the jurors was harmless to defendant." 152 Ill. 2d at 341, 604 N.E.2d at 910 (citing *Remmer*, 347 U.S. at 229, 74 S. Ct. at 451). Santos also relied on *People v. Bryant*, 176 Ill. App. 3d 809, 815, 531 N.E.2d 849, 853 (1st Dist. 1988). (Direct App. Br. at 40–41; Pet. for Rehrg. at 3–5; PLA 9–10.) *Bryant* likewise affirmed that the state must show beyond a reasonable doubt that the defendant was not prejudiced by an *ex parte* communication between the judge and jury. *Id.* (finding the defendant was prejudiced because, in answering the deliberating jury's request for transcripts without informing the defense, the court failed to "inquire[] further to determine whether the jury desired specific testimony, and what specific testimony they wanted," making it "impossible to determine whether substantial rights were affected: we therefore acknowledge the possibility that they were, and proceed from that assumption").

Further, Santos framed the issues in terms so particular as to call to mind a specific constitutional right, and he alleged a pattern of facts that is well within the mainstream of constitutional litigation. *See Verdin v. O'Leary*, 972 F.2d 1467, 1480 (7th Cir. 1992) (asserting claims based on a defendant's rights to "be present at critical stages of his trial" and to "a fair trial" are "terms . . . particular enough to call to mind a defendant's right—stemming from the

Sixth Amendment and Fourteenth Amendment—to be present at his trial"); *Ellsworth*, 248 F.3d at 639 (asserting a petitioner has a "right to be present" is enough to alert the state courts that he "potentially pressed a federal constitutional claim" and avoid procedural default on his habeas claim). Santos has fairly presented his claim before the state courts, and the fact that he did not directly cite *Remmer* does not now foreclose any reliance on the constitutional principles stated therein. *See Ellsworth*, 248 F.3d at 639 (a petitioner is "not required to cite the Constitution 'book and verse' to preserve his federal claim." (citing *Picard v. Connor*, 404 U.S. 270, 278, 92 S. Ct. 509, 513 (1971)); *Perruquet*, 390 F.3d at 512 ("Whatever gaps there may be in [defendant's] petition and supporting memorandum, the basic rationale of [defendant's] due process argument is readily discernible"). Santos raised his claims "with enough detail to have sufficiently alerted the state court to his federal constitutional claim" and the substance of his argument has remained the same. *Ward*, 613 F.3d at 697. We therefore find that Respondent cannot sustain a procedural default defense even if it had been timely raised.

Relying on *People v. Cart*, 102 Ill. App. 3d 173, 186–87, 429 N.E.2d 553, 564–65 (2d Dist. 1981), Respondent also asserts Santos' claim is defaulted because "Illinois procedural rules require a defendant who seeks a *Remmer* hearing to ask for one; trial judges need not conduct such a hearing sua sponte." (Mot. at 7; *see also* Reply Br. at 7 (citing *Cart* for the proposition that a defendant who fails to request a *Remmer* hearing "has no legal entitlement on appeal to receive a remand for such a hearing").) Respondent overstates *Cart*'s holding. In *Cart*, defendants learned that a juror received a telephone call from the bailiff, who inquired as to the outcome of the case, and the juror responded that they would be back in court the next morning. 102 Ill. App. 3d at 186, 429 N.E.2d at 563–64. Defendants argued on appeal that they were prejudiced by the communication and by the court's failure to hold a hearing to determine

10

if the communication "may have tainted the jury." *Id.* The court considered the communication and found no prejudice resulted. *Id.* ("It is difficult to imagine how this single question, without any showing it was coupled with an attempt to influence the juror's decision, could deny defendants their right to an impartial jury.") The court considered the prejudice inquiry in light of the fact that the defense failed to make any response when they learned about the communication and given the record clearly showed defense counsel did not request a hearing at the time. *Id.* at 187, 429 N.E.2d at 564. The court found that although "the better practice" would have been to interview the juror in the presence of counsel, the trial judge did not abuse its discretion in failing to do so. *Id.* at 187, 429 N.E.2d at 564–65. While the *Cart* court found persuasive the clear record showing a lack of a request for a hearing, we see nothing in *Cart* establishing a "procedural rule" requiring such a request.

Nor are we persuaded, as Respondent urges, that *United States v. Cardena*, 842 F.3d 959 (7th Cir. 2016) forecloses Santos' claim. (Mot. at 8.) While *Cardena* found its "review is made particularly difficult in light of the fact that Defendants did not request a hearing," it did not bar the claim outright. 842 F.3d at 976. Moreover, *Cardena* relied on the fact that the defendants failed to object, and contrary to Respondent's assertion that Santos' state-court counsel "did not ask for a chance to question the jurors," (Mot. at 10), there was in fact no record of the proceedings during which the trial court informed the attorneys about the dictionary and at which the attorneys objected to its use. Accordingly, it is not clear from the record whether Santos' attorneys requested a hearing, a chance to question the jurors, or other relief. However, Santos plainly raised the alleged constitutional violation at the time it occurred, in a request for a new trial, and on appeal, but his claims were rebuffed without further inquiry at every step.

11

## II. SECTION 2254(e)(2)

Respondent further asserts that § 2254(e) prohibits an evidentiary hearing on Santos' claim. (Mot. at 10–11.) Section 2254(e)(2) "bars a district court from conducting an evidentiary hearing or otherwise permitting an expansion of the evidentiary record in support of a habeas claim if the petitioner failed to develop the factual basis for his claim in state court." *U.S. ex rel. Hampton v. Leibach*, 347 F.3d 219, 239 (7th Cir. 2003). Under § 2254(e)(2), "a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams v. Taylor*, 529 U.S. 420, 432, 120 S. Ct. 1479, 1488 (2000). A prisoner exercises diligence where he "made a reasonable attempt, in light of the information available at the time, to investigate and pursue his claims in state court." *Id.* at 435, 120 S. Ct. at 1490. Here, the defense was informed the trial judge provided the jury with a dictionary in an exchange that took place off the record. (Direct App. Order, *People v. Santos*, No. 02 CR 1562 (1st Dist. 2009), State Ct. R., Ex. A (Dkt. No. 18–1) at 18; Am. Mot. for New Trial, State Ct. R., Ex. EE (Dkt. No. 18–31 at C 238–39.) The state appellate court noted the lack of a record, but found it irrelevant to its decision. (Direct App. Order at 18.) In any case, the dictionary was not returned to the jury the following day. (Am. Mot. for New Trial at C 239.) Santos again raised the issue before the trial judge in a motion for a new trial immediately after the verdict. (*Id.* at C 240–43; Trial Tr. (Dkt. No. 18–28) at TTT 12–15, 21–22.) He likewise raised his claim and set forth the factual basis for it before the appellate courts. Accordingly, we do not find Santos lacked diligence in

pursuing his claim in state court.[1] *Williams*, 529 U.S. at 435, 120 S. Ct. at 1490. He is now relying on the same claim and factual basis in his § 2254 petition. Because Santos was reasonable in his efforts to litigate his claim in state court and did not contribute to the absence of a full and fair adjudication in state court, § 2254(e)(2) does not prohibit an evidentiary hearing on his claim in federal court. *Id.* at 437, 120 S. Ct. 1491.

### III. NON-RETROACTIVITY DOCTRINE

Respondent next argues that "[i]f this Court were somehow persuaded to recast petitioner's *Remmer* claim as involving a new procedural rule," then under *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060 (1989), the "non-retroactivity doctrine would bar retroactive enforcement of any such rule here." (Mot. at 11–12.) Respondent contends the *Teague* bar would apply if we find "for instance, that *Remmer* extends to interactions between judge and jurors, as opposed to interactions between jurors and third parties; that trial judges must hold a *Remmer* hearing sua sponte if the defendant does not request one; or that jurors' receipt of a dictionary always warrants a *Remmer* hearing or presumption." (*Id.* at 11.) "Under the *Teague* framework, an old rule applies both on direct and collateral review, but a new rule is generally applicable only to cases that are still on direct review." *Whorton v. Bockting*, 549 U.S. 406, 416, 127 S. Ct. 1173, 1180 (2007). As this is a habeas case, and our review is constrained by the

---

[1] Respondent also implies that Santos should have raised a *Remmer* claim via a postconviction motion pursuant to 725 ILCS 5/122–2. (Mot. at 10; Reply Br. at 9.) However, Respondent provides no authority showing Santos was required to do so. "Rather, a postconviction proceeding is a collateral attack upon the prior conviction and affords only limited review of constitutional claims not presented at trial. The scope of the proceeding is limited to constitutional matters that have not been, nor could have been, previously adjudicated. Any issues that could have been raised on direct appeal, but were not, are procedurally defaulted, and any issues that have previously been decided by a reviewing court are barred by res judicata." *People v. Harris*, 224 Ill. 2d 115, 124–25, 862 N.E.2d 960, 966 (Ill. 2007). Because Santos raised his Sixth and Fourteenth Amendment claims on direct appeal, it is not clear that he could have done so in a postconviction motion, though parallel appeals may be permitted. *Id.* at 128, 862 N.E.2d at 968–69.

13

Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254, we are not creating any new rule, nor are we applying any Supreme Court precedent decided after Santos' direct appeal became final. Accordingly, there is no basis for denying Santos' claim on this ground, and to the extent Respondent has suggested otherwise, he construes Santos' claim too narrowly.

**IV.    BURDEN OF PROOF**

In the alternative, Respondent argues that if an evidentiary hearing is necessary, the burdens of proof at the hearing must shift between the parties. Respondent asserts the prejudice inquiry should entail three steps, the first of which requires a determination as to "what extraneous information actually reached the jurors, and whether that kind of information is 'egregious' or highly likely to cause prejudice." (*Id.* at 12.) Respondent argues "because the burden at this stage is petitioner's, his claim must fail if none of the available former jurors can remember what words, if any, were looked up" and similarly, his claim may fail "even if there is no conclusive evidence in the State's favor." (*Id.* at 12–13.) Next, Respondent contends "Stage 2" requires the court to "decide whether petitioner was prejudiced under *Remmer*" and the burden of proof "depends upon what word was looked up and how 'egregious' or facially prejudicial it appears." (*Id.* at 13.) Finally, Respondent argues "if petitioner's claim survives the first two stages, then he must shoulder the burden at Stage 3 of establishing 'actual prejudice' under *Brecht*." (*Id.*)

We believe clarification as to the parties' burdens of proof is necessary. In cases involving a potential intrusion upon a jury's deliberations, a presumption of prejudice may be appropriate in some, but not all cases. *Hall v. Zenk*, 692 F.3d 793, 801 (7th Cir. 2012) (such a presumption "is, in fact, vital, though its use should not be automatic regardless of the level of prejudicial impact that is likely to flow from a given intrusion"). Regardless of whether a

14

presumption of prejudice applies "as opposed to a specific analysis does not change the ultimate inquiry: Did the intrusion affect the jury's deliberations and thereby its verdict?" *Olano*, 507 U.S. at 739, 113 S. Ct. at 1780. "[T]he extraneous communication to the juror must be of a character that creates a reasonable suspicion that further inquiry is necessary to determine whether the defendant was deprived of his right to an impartial jury. How much inquiry is necessary (perhaps very little, or even none) depends on how likely was the extraneous communication to contaminate the jury's deliberations." *Wisehart v. Davis*, 408 F.3d 321, 326 (7th Cir. 2005). In Santos' case, the state court "failed to apply this test or any reasonable variant of it," finding only that the trial judge acted "well within the discretion of the court" in summarily denying Santos' claim. *Id.* Thus, there was no inquiry at all into whether the dictionary contaminated the jury's deliberations. As we have previously explained, and as Santos has argued, it is reasonable to infer the jury may have used the dictionary for an improper purpose, including constructing their own definitions of legal terms that do not accurately or fairly reflect applicable law. Thus, some inquiry, "however abbreviated" was necessary to determine what impact the dictionary had on the jury's verdict. *Id.* We reiterate that an evidentiary hearing is now necessary to make this determination.

However, to obtain habeas relief, Santos bears the burden of establishing that the constitutional error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623, 113 S. Ct. 1710, 1714 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); *Hall*, 692 F.3d at 798. "The *Brecht* standard reflects the view that a 'State is not to be put to th[e] arduous task [of retrying a defendant] based on mere speculation that the defendant was prejudiced by trial error; the court must find that the defendant was actually prejudiced by the

error.'" *Davis v. Ayala*, ––– U.S. –––, 135 S. Ct. 2187, 2198 (2015) (quoting *Calderon v. Coleman*, 525 U.S. 141, 146, 119 S. Ct. 500, 503 (1998)). But, "when a habeas court is in grave doubt as to the harmlessness of an error that affects substantial rights, it should grant relief." *O'Neal v. McAninch*, 513 U.S. 432, 445, 115 S. Ct. 992, 999 (1995). Thus, Santos must show that he was actually prejudiced by the *ex parte* communication with the jury or the introduction of the dictionary into the jury's deliberations. Insofar as our December 2, 2016 Order suggested otherwise, we hereby correct our previous instructions to reiterate that Santos must prove actual prejudice in order to have his petition granted. *Brecht*, 507 U.S. at 622, 113 S. Ct at 1714; *Hall*, 692 F.3d at 806–07.

## CONCLUSION

As set forth above, Respondent's motion to reconsider our December 2, 2016 Order is granted in part and denied in part. This matter remains referred to Magistrate Judge Sheila M. Finnegan to conduct a hearing and file a Report and Recommendation as to Claim One. A status hearing is set before this Court on August 24, 2017. It is so ordered.

                                                                                                                                 Marvin E. Aspen
                                                                                                                                 United States District Judge

Dated: May 18, 2017
       Chicago, Illinois