UNITED STATES DISTRCT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CARLOS SANTOS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Case No. 15 C 5325 |
| v. | ) | Hon. Marvin E. Aspen |
| | ) | |
| CHRISTINE BRANNON,[1] | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

Presently before us are Santos' objections to Magistrate Judge Finnegan's Report and Recommendation. (Objections (Dkt. No. 186).) Magistrate Judge Finnegan recommends that Santos' request for a writ of habeas corpus be denied. (Report and Recommendation ("R&R") (Dkt. No. 184).) For the reasons set forth below, we overrule Santos' objections, adopt the R&R, and deny Santos' habeas petition.

**BACKGROUND**

Santos' conviction stems from a May 2002 attempt to collect a drug debt valued at around $75,000 that resulted in a shootout and death of Jeffrey Smith. We assume familiarity with the relevant facts as detailed in our December 2, 2016 Order and our May 5, 2017 Order, and do not fully recount them here. *Santos v. Williams*, No. 15 C 5325, 2017 WL 2189102, at *1

---

[1] Under Fed. R. Civ. P. 25(d), a public officer's successor is automatically substituted as a party. We hereby substitute the named respondent in this case from Randy Pfister to Cristine Brannon, the current warden of Hill Correctional Center. *See id.*

(N.D. Ill. May 18, 2017); *Santos v. Williams*, No. 15 C 5325, 2016 WL 7077104, at *1 (N.D. Ill. Dec. 2, 2016).

Santos filed his § 2254 petition on June 16, 2015, challenging his felony first degree murder and discharge of a firearm convictions in Illinois state court. He asserted two claims. First, that the State violated his Fifth, Sixth, and Fourteenth Amendment rights when the trial judge communicated *ex parte* with the deliberating jury, provided them a dictionary, and failed to ascertain what the jury used it for after it was removed. Second, that the State violated his right to due process by failing to disclose material evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963). We denied Santos' second claim, but determined that he was entitled to an evidentiary hearing on his first claim to determine whether and to what extent the *ex parte* communication and jury use of the dictionary prejudiced him. *See Santos I*, 2016 WL 7077104, at *10; *see also Santos II*, 2017 WL 2189102, at *1, *8. We appointed counsel to represent Santos at the hearing and referred the matter to Magistrate Judge Finnegan to conduct the evidentiary hearing and file a report and recommendation.

### A. Evidentiary Hearings

At the evidentiary hearings, eleven former jurors testified (the twelfth had since died) and thereafter both parties filed briefs in support of their respective positions. (*See* Dkt. Nos. 145, 154, 162.) Juror David Majer testified that two or three jurors looked up a single word using the dictionary, for no more than two or three minutes. (R&R at 16-22, 38.) He testified that the word they looked up was "collaboration," "conspiracy," or "collusion." (*Id.*) A second juror, Erica Cuneen, testified that the jury requested a dictionary, but that she had only a "slight memory" of the event and that she did not recall how, if at all, the dictionary was used. (*Id.* at 16.) The other jurors had no memory of the dictionary usage. (*Id.*)

B. **The Underlying Trial**

As the Magistrate Judge observed, the jury was instructed that, to find Santos guilty of first degree murder, it had to find beyond a reasonable doubt that he (or one for whose conduct he was legally responsible) not only caused the death of the decedent but did so when attempting to commit the offense of residential burglary, aggravated kidnapping, or aggravated unlawful restraint. The jury was instructed that a "person is legally responsible for the conduct of another person when, either before or during the commission of an offense and with the intent to promote or facilitate the commission of an offense, he knowingly solicits, aids, abets, agrees to aid or attempts to aid the other person in the planning or commission of an offense." (*Id.* at 172.) The jury was further instructed that an "attempt" occurs when "with the intent to commit the offense of residential burglary, aggravated kidnapping or aggravated unlawful restraint," a person "does any act which constitutes a substantial step toward the commission of" those offenses. (*Id.* at 174). The jury received separate instructions for each of those offenses.

The jury deliberated for over four hours over two days and then signed a unanimous verdict finding Santos guilty of first-degree murder and having been armed with a firearm and personally discharged it during the commission of that offense. (Trial Transcript (Dkt. No. 18-27 at 196).)

About an hour and a half into the jury's deliberations, the trial judge summoned counsel for both sides to the courthouse and informed them that the jury requested a dictionary and that one had been given to the jury, and that the jury requested a new set of verdict forms. (Affidavit of Defense Counsel (Dkt. No. 18-31) at 239-40.) The jury retained possession of the dictionary for about one-and-a-half additional hours until it completed deliberation for the day. (*Id.* at 240.) At Santos' request, the dictionary was not returned to the jury room the next day. (*Id.*) The

spoiled verdict forms were preserved and reflect that four jurors had not signed any form and another juror had signed both guilty and not guilty forms on the first-degree murder charges. (*See* Dkt. Nos. 18-31 at 184-85, 194.)

## LEGAL STANDARD

We review Magistrate Judge Finnegan's R&R *de novo*. Fed. R. Civ. P. 72(b)(3). In doing so, we may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the Magistrate Judge with instructions. *See id.* Arguments not made before a Magistrate Judge are waived, and "district courts should not consider arguments not raised initially before the Magistrate Judge, even though their review in cases . . . is de novo." *United States v. Melgar*, 227 F.3d 1038, 1040 (7th Cir. 2000).

It "is well established that a habeas petitioner must prove prejudice in order to have his petition granted." *Hall v. Zenk*, 692 F.3d 793, 805-06 (7th Cir. 2012). "More specifically, he must show that the constitutional error had a 'substantial and injurious effect' on the outcome of his case." *Id.* at 805; *see also Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).

## ANALYSIS

Santos' objects to the R&R on the bases that it wrongly found no prejudice stemming from (1) burden shifting, (2) the jury's use of a dictionary during deliberations, (3) the state trial judge's *ex parte* communications with the jury about the dictionary, among other errors. Our holding mirrors the Magistrate Judge's thorough reasoning as set forth in her R&R. The Magistrate Judge's R&R recounted the evidence produced at Santos' trial, scrutinized the state court record, analyzed testimony at the evidentiary hearing conducted before the Magistrate

Judge. She then addressed each of petitioner's arguments from his post-hearing brief.[2] (*See generally* R&R.) In short, she concluded that Santos did not suffer any prejudice as a result of the conduct underlying his objections.

## I. Burden Shifting

Santos first asks that we overrule the Magistrate Judge's R&R's holding that he has the burden of establishing prejudice. As the Magistrate Judge correctly stated, a habeas petitioner bears the bears the burden of proving prejudice. *See, e.g.*, *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993); *Hall v. Zenk*, 692 F.3d 793, 798 (7th Cir. 2012); *Santos I*, 2017 WL 2189102, at *8. Therefore, Santos' objection that the R&R applied the wrong burden is overruled.

## II. Dictionary

Santos next advances multiple objections relating to the dictionary. We address them in turn.

### A. *State v. Aguilar*, 22 Ariz. 299, 301-02 (Ariz. Ct. App. 2010)

Santos objects to the R&R in part because he claims that it misapplied a six-factor test that an Arizona state appellate court used. *State v. Aguilar*, 22 Ariz. 299, 301-02 (Ariz. Ct. App. 2010). Arizona's court provided a helpful recitation of commonsense considerations when evaluating prejudice flowing from a jury's use of a dictionary. These are: (1) the importance of the word being defined to the resolution of the case; (2) the difference between the dictionary and legal definitions; (3) how the material was received by the jury, (4) the length of time it was available to the jury; (5) the extent to which the jury discussed and considered it; and (6) the timing of its introduction. *Id.*

---

[2] Santos does not advance an objection that the Magistrate Judge's R&R failed to consider one of his contentions.

Neither we nor Illinois' trial courts are bound to follow an Arizona state court's holding. Nonetheless, *Aguilar* is distinguishable from Santos' situation. Circuits throughout the country have found no prejudicial impact in cases like Santos' that involve a jury that uses a dictionary to define non-essential terms. *See, e.g.*, *United States v. Aguirre*, 108 F.3d 1284, 1289 (10th Cir. 1997); *United States v. Williams-Davis*, 90 F.3d 490, 502-03 (D.C. Cir. 1996); *United States v. Steele*, 785 F.2d 743, 745-47 (9th Cir. 1986). Santos' situation aligns with these circuit holdings. That leads us to the same holding as the Magistrate Judge made in her R&R.

### B. Spoiled Verdict Forms

Santos also argues that the use of the dictionary, considering the spoiled verdict forms, results in prejudice. Alternatively stated, Santos objects on the basis that the R&R fails to acknowledge the correlation between the receipt of the dictionary and request for new verdict forms. He argues that before jurors received the dictionary and at around the time that they requested new verdict forms, five jurors were voting guilty, one was voting not guilty, and six were undecided (including the juror who signed both forms). According to Santos, the change in votes from not guilty and undecided to guilty suggests the jury's use of the dictionary swayed their votes. As the R&R explains, Santos failed to raise this issue on direct appeal. (R&R at 57.) As a result, such a claim is procedurally defaulted. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848 (1999) (holding that federal habeas claims must first be presented in "one complete round" of state appellate review).

### C. Juror Memories

Santos objects to R&R's conclusions as to juror memory. In doing so, Santos argues that the fact that some jurors remembered the dictionary and its consultation during deliberations, even though almost twelve years had elapsed, is enough to demonstrate its impact on the jurors.

6

We disagree. Rather to the contrary of Santos' suggestion that "several jurors" remembered the dictionary, only two or three of the testifying jurors recalled it. We agree with the R&R's logic: If the dictionary definition indeed was the key to resolving a struggle among the jurors and contributed to jurors changing their minds, one would expect more jurors to remember the dictionary and even the definition that brought them to unanimity. (R&R at 37.)

### D. Accountability

Santos objects to the R&R's conclusion that "it is unlikely that the definition of the word collaborate, conspire, or collude was . . . the key to the jury resolving an alleged struggle over his accountability for others' actions." (R&R at 43.) Indeed, there was an "accountability" jury instruction. (R&R at 45.) We agree with the R&R's holding because the short and general definitions of the words "collaborate," "conspire," or "collude," are fundamentally different that the jury's accountability instruction that defined what it takes to be "legally responsible" for and accountable for another's conduct. There is no evidence whatsoever that the jury used the dictionary to try to define a word like "accountability" or "legally responsible." And even if they did, that would not automatically foreclose the possibility that the jurors nevertheless followed the jury instructions' definitions.

### E. Comparing Definitions

Like the preceding objection, Santos objects to the R&R on the basis that the Magistrate Judge compared the dictionary definitions of the words the jury defined to the jury instructions' words and definitions. Santos cites no law whatsoever in support of this objection. Indeed, we opine that no case law exists in support of Santos' position. In fact, we would have been inclined to reverse the R&R in this case had the Magistrate Judge *not* scrutinized the definitions of the words the jury defined alongside the jury instructions.

**F.** *Moore*, *Wiehart*, **and** *Hall*

Santos next objects to the Magistrate Judge's finding that three cases do not support Santos' petition with respect to the actual prejudice component. *See Moore v. Knight*, 368 F.3d 936 (7th Cir. 2004); *see also Wisehart v. Davis*, 408 F.3d 321 (7th Cir. 2005); *Hall*, 692 F.3d at 793. We agree with the Magistrate Judge's determination that these three cases do not support Santos' position.

First, as correctly distinguished by the Magistrate Judge, the Seventh Circuit reversed *Moore* for reasons that make it distinguishable from Santos' case. *See Moore*, 368 F.3d at 936. The main reason for *Moore*'s reversal was that the court failed to hear testimony from enough jurors to form a consensus and applied the wrong standard of law. *Id.* at 937-38. Here, testimony has been heard from all living jurors and the correct standard of law has been applied.

The R&R also rightly found *Wisehart* unhelpful to Santos. *See Wisehart*, 408 F.3d at 326-27. *Wisehart* instructs that a court should conduct a hearing whenever extraneous information reaches the jury to inquire into whether the jury's impartiality is impacted. *Id.* We complied with *Wisehart*'s instructions because the Magistrate Judge conducted an evidentiary hearing to examine whether extraneous communications and information impermissibly reached and influenced the jury.

Last, Santos contends that the R&R misapplied *Hall*. *See Hall*, 692 F.3d at 795. In *Hall*, the jury learned during deliberations that Hall's prison inmates (one whom was the son of a juror) believed he was guilty, even though that information was not adduced at trial. *Id.* The Seventh Circuit held that the District Court should have held proceedings to allow the state to show countervailing facts that could alleviate prejudicial impact to the jury. *Id.* at 807. We agree with the factual distinctions drawn in the R&R the jury contacts at issue in Santos' case are

vastly different from those in *Hall*.

For these reasons, Santos' objections to the R&R's application of *Moore*, *Wisehart*, and *Hall* are overruled.

### G. Evidentiary Strength

Santos objects with the R&R's factual finding that the evidence on the record fails to establish a likelihood of prejudice. We find, however, that the evidence on the record at trial overwhelmingly supported a guilty verdict. This evidence included a videotaped confession by Santos where he admitted to his participation in the very kidnapping and burglary plot that ultimately led to a shootout and death. Plus, Santos testified at trial that he paid two officers to accompany him to collect the drug debt. These pieces of evidence, among others, are likely enough to support the guilty verdict despite the limited *ex parte* communications and the jury's use of a dictionary to define words not contained in the jury instructions. Objection overruled.

### H. Curative Instructions

Santos objects to the R&R's determination that the trial court's lack of a curative instruction regarding the dictionary was not prejudicial. We agree with the R&R's holding that Santos and his counsel failed to request a curative instruction and preserve the record. Even if they had done so, as the R&R explained, that failure to ask for a curative instruction at trial did not alter the result. Like the R&R explained, the "ultimate question is whether Santos has shown from the evidence that the jury's use of the dictionary had 'a substantial and injurious effect' on the outcome of the verdict . . . or that there is a 'grave doubt as to the harmlessness of an error that affect substantial rights.'" (R&R at 53-54 (internal citations omitted).) Even had Santos requested a curative instruction, it would not have changed the trial's outcome. Objection overruled.

### III. *Ex Parte* Communications About The Dictionary

Santos next objects to the R&R's conclusion that no prejudice resulted from the judge's *ex parte* communication with the jury about the dictionary. "The Supreme Court has made it clear that [t]he defense has no constitutional right to be present at every interaction between a judge and a juror, nor is there a constitutional right to have a court reporter transcribe every such communication." *United States v. Smith*, 31 F.3d 469, 472 (7th Cir. 1994) (internal citations and quotations omitted). "The Court has made it equally clear, however, that a defendant has a right, guaranteed by the Due Process Clause, to be present at a proceeding whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." *Id.* In other words, the existence of *ex parte* communications does not automatically create a reversible error. *See United States v. Gagnon*, 470 U.S. 522, 526 (1985).

In *Smith*, for example, the Seventh Circuit concluded that certain *ex parte* communications between the judge and jury were prejudicial. *Smith*'s jury expressed concern over the fact that their private addresses had been made available to the criminal defendant's counsel. *Id.* at 472. The Seventh Circuit determined that the expression of concern about the disclosure of where they live may have indicated that the jurors already made up their minds, before the trial concluded, that the criminal defendant was guilty and posed a potential danger to them. *Id.* Accordingly, the Seventh Circuit held that the defendant had a right to be present during that conversation to ensure that the court's actions would not be interpreted as a confirmation of the jury's bias. *Id.*

*Smith*'s *ex parte* communication is distinguishable from the instant case's communication. Here, the only *ex parte* communication that occurred consisted of the jury sending a note to the judge asking for a dictionary, and the judge responding by delivering one.

10

(R&R at 55.) Since the R&R correctly concluded that Santos suffered no prejudice from the jury's use of the dictionary, it logically proceeds to rightfully find no prejudice resulting from communications about that dictionary.

## IV. Other Alleged Errors

Santos advances a combined objection in a section to his brief entitled "Prejudice from Other Errors." (Objections at 49.) Those objections allege a pattern of *ex parte* communications between the judge and jury, and focus in on the jury's request for trial transcripts, the jury's request for new verdict forms, and the jury's request for a clarification of the verdict forms. We address these objections in turn.

We agree with the R&R's determination that the record does not support Santos' argument that the trial judge engaged in a pattern of improper prejudicial contacts with jurors. Nevertheless, these are new claims that were not described in the initial habeas petition. And these claims do not relate back to the original petition's filing date because they do not share a common core of operative fact. *See Mayle v. Felix*, 545 U.S. 644, 657-64 (2005). Thus, to the extent that these new claims are based on a new set of facts, they are untimely under the one-year statute of limitations for habeas petitions, and we reject them. 28 U.S.C. § 2244(d).

The *ex parte* communication for new verdict forms does not warrant habeas relief. As discussed above, although the judge did not consult with the parties in advance, he informed them as soon as they returned to court and made the spoiled forms part of the record. Santos procedurally defaulted this claim by having failed to preserve an objection to this on the record and failed to raise it on direct appeal. *See O'Sullivan*, 526 U.S. at 848.

The *ex parte* communication regarding trial transcripts does not warrant habeas relief either. In Illinois, trial courts have discretion to give jurors such transcripts when they are

11

available. *People v. McLaurin*, 922 N.E.2d 344, 353 (Ill. 2009).  Therefore, the judge did not make a prejudicial error by following Illinois' own civil procedure.  Moreover, Santos never complained at trial or on appeal about the transcripts. (R&R at 48.)  Indeed, the prosecutor's trial notes indicate that both sides agreed to give transcripts to the jury. (Dkt. No. 154-1 at 3.)

Nor does the jury's communication with the judge for a "clarification" of the verdict forms warrant habeas relief.  The record shows that, before responding to the jury's request for clarification, the judge called the parties into court to discuss the matter. (R&R at 57-58.)  Then the parties agreed that the jury should be instructed to refer to the jury instructions' description on how to complete the verdict forms. (*Id.*)

For these reasons, we overrule Santos' objections to other alleged errors.

### V.     Santos' Request for Leave to File an Amended Habeas Petition

Included within Santos' brief is a perfunctory sentence that asks for leave to file an amended habeas petition to include the constitutional claims related to additional contacts between the judge and jury, and claims of ineffective assistance of counsel. (Objections at 54.) We deny that request because new claims based on new facts would be untimely under the one-year limitations period for habeas petitions. *See* 28 U.S.C. § 2244(d).  That limitations period began running, at the latest, after the May 2018 hearings concluded.  More than a year has since passed, and Santos has not provided any excuse for waiting so long until seeking such leave.

**CONCLUSION**

For the foregoing reasons, we overrule Santos' objections, adopt Magistrate Judge Finnegan's R&R, and deny Santos' habeas petition. It is so ordered.

_____
Honorable Marvin E. Aspen
United States District Judge

Dated: January 5, 2021
Chicago, Illinois