**UNITED STATES DISTRCT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CARLOS SANTOS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 15-cv-05325 |
| ) | |
| CHRISTINE BRANNON, Warden, ) | Judge Marvin E. Aspen |
| ) | |
| Respondent. ) | |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

Presently before us is Petitioner Carlos Santos's request for a certificate of appealability and motion to proceed on appeal *in forma pauperis* under 28 U.S.C. § 1915(a).[1] For the reasons stated below, we deny Santos's motions.

**BACKGROUND**

Santos filed a habeas corpus petition under 28 U.S.C. § 2254 challenging his first-degree murder conviction following a Cook County, Illinois' 2006 jury verdict. (Dkt. No. 1.) Santos alleged constitutional violations when the trial judge communicated *ex parte* with the jury, provided them with a dictionary, and failed to determine how the dictionary was used by the jury. (Dkt. No. 1 at 5, 11–13.) He also alleged a violation of his due process rights under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963). (Dkt. No. 1 at 5, 14–16.)

We denied Santos's *Brady* claim. *Santos v. Williams*, No. 15 C 5325, 2016 WL 7077104, at *9 (N.D. Ill. Dec. 2, 2016) ("*Santos I*"). But we ordered an evidentiary hearing to determine

---

[1] Santos bases his motion to proceed *in forma pauperis* on "the Effective Assistance of Counsel Clause of the Sixth Amendment to the Constitution of the United States, as well as 18 U.S.C. § 3006A." (Dkt. No. 205 at 1.) Motions to proceed *in forma pauperis* are governed by 28 U.S.C. § 1915(a) and Fed. R. App. P. 24, so we construed this motion to be filed under those authorities.

whether Santos the *ex parte* communication and use of the dictionary prejudicially violated his constitutional rights. *Id.* at *7-8. For the purposes of this order, we assume familiarity with the evidentiary hearing as detailed by Magistrate Judge Finnegan's Report & Recommendation as we adopted it, and do not recount them here. In doing so, we held that Santos did not suffer prejudice as a result of the conduct underlying his claims. (Dkt. No. 195 at 4–5.) Santos seeks a certificate of appealability over that holding. (Dkt. No. 198.)

## STANDARD OF LAW

### A. Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Proceedings requires a district court "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may be issued only if the "applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *White v. United States*, 745 F.3d 834, 835 (7th Cir. 2014); *Watson v. Hulick*, 481 F.3d 537, 543 (7th Cir. 2007). This showing is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Dalton v. Battaglia*, 402 F.3d 729, 738 (7th Cir. 2005) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S. Ct. 1029, 1039 (2003)). A full consideration of the factual or legal bases in support of the claims is not needed; a court need only conduct a general assessment of the merits of the claims. *United States ex rel. Barrow v. McAdory*, No. 01 C 9152, 2003 WL 22282520, at *1 (N.D. Ill. Sept. 29, 2003) (citing *Miller-El*, 537 U.S. at 336, 123 S. Ct. at 1039).

### B. Proceeding *In Forma Pauperis* on Appeal

Prisoners do not have a right to counsel on collateral review, though the court often

appoints counsel for prisoners on appeal. *Lavin v. Rednour*, 641 F.3d 830, 834 (7th Cir. 2011). In civil cases, including habeas corpus actions on collateral review, petitioners seeking to obtain appointed counsel on appeal from a district court must request reappointment. *Johnson v. Chandler*, 487 F.3d 1037, 1038 (7th Cir. 2007). If the petitioner was allowed to proceed *in forma pauperis* in the district court action, no further authorization is needed. Fed. R. App. P. 24(a)(3). Parties that did not proceed *in forma pauperis* in the district court yet wish to do so on appeal must file a motion in the district court. Fed. R. App. P. 24(a)(1). Parties must attach an affidavit to the motion that "(A) shows in the detail prescribed by Form 4 of the Appendix of Forms the party's inability to pay or to give security for fees and costs; (B) claims an entitlement to redress; and (C) states the issues that the party intends to present on appeal." *Id.* If the district court denies the motion, the petitioner may file a motion in the Court of Appeals. Fed. R. App. P. 24(b).

**ANALYSIS**

Santos challenges our denial of his habeas petition and seeks a certificate of appealability for his interference with jury deliberations and *Brady* violation claims. (Dkt. No. 198 at 1.) He also seeks redress for *ex parte* communications beyond the dictionary discussion by adding an ineffective assistance of counsel claim. (Dkt. No. 198 at 26.) For all of these claims, Santos argues that we misapplied the law and that reasonable jurists could arrive at different conclusions. Finally, Santos seeks to proceed *in forma pauperis*. We consider these in turn.

**A. Certificate of Appealability Claims**

    **1. Interference with Jury Deliberations**

Santos first argues that we improperly shifted the burden to him following the evidentiary hearing held by Magistrate Judge Finnegan under *Remmer v. United States*, 347 U.S. 227, 74 S.

Ct. 450 (1954), and that he met the burden. He then argues that reasonable jurists could debate that he met his burden to show prejudice for the *ex parte* communications related to the dictionary. We explore these arguments below.

### a. The burden to prove prejudice rests on Santos

Santos maintains that we applied the wrong burden when assessing a *Remmer* hearing in a habeas proceeding. (Dkt. No. 198 at 9.) Under Santos's reading of the law, petitioners facing a violation of their rights under *Remmer* have a different burden than all other petitioners on habeas corpus; that is, the state must prove the violation was harmless rather than the petitioner prove prejudice. *Id.* Rather, the law requires prisoners advancing habeas petitions establish that they were prejudiced by the state's constitutional error. *Brecht v. Abrahamson*, 507 U.S. 619, 638, 113 S. Ct. 1710, 1722 (1993)); *Hall v. Zenk*, 692 F.3d 793, 805 (7th Cir. 2012).

Santos claims that the result in *Hall* indicates otherwise, but the language in the opinion and approach taken by the court clearly disagree. In *Hall*, like here, the state court held a hearing on the potential prejudice of *ex parte* communications. 692 F.3d at 805. In both cases, the state conducted a cursory review of the communications and did not apply the presumption of prejudice at the hearing, contrary to the requirements of *Remmer*. *Id.* at 806. However, that is where their similarities end. *Hall* found that the affidavits submitted supported the petitioner's contention that the *ex parte* communications influenced the verdict and therefore yielded prejudice. *Id.* at 806–07. It then afforded the state the opportunity to rebut this strong showing of prejudice. *Id.* We did not have enough evidence to make such a determination, so we ordered an evidentiary hearing. *Santos I*, 2016 WL 7077104, at *5. However, as *Hall* counsels, a habeas petitioner must still show prejudice resulted from the error, even if it is "counterintuitive given the constitutional error at issue." *Hall*, 692 F.3d at 806 (citing *Brecht*, 507 U.S. at 622, 113 S.

Ct. at 1713). *Hall* clearly articulated the rule in this Circuit, and it is by that precedent that we are bound. Accordingly, Santos has not made a substantial "showing of the denial of a constitutional right" regarding burden shifting. 28 U.S.C. § 2253(c)(2).

Nor does Santos make a substantial showing that he was denied a constitutional right regarding the dictionary's use. *See id.* Santos argues that reasonable jurists would debate whether he made a proper showing of prejudice for the use of the dictionary. (Dkt. No. 198 at 13–24.) To support this contention, Santos walks through a litany of arguments that were already addressed in Judge Finnegan's R&R and in our order adopting it. *Id.* Again, as *Hall* counsels, Santos must show that the constitutional error of consulting the dictionary had a "substantial and injurious effect" on the verdict. 692 F.3d at 805 (quoting *Rodriguez v. Montgomery*, 594 F.3d 548, 551 (7th Cir. 2010)).

Looking to the facts elicited from the evidentiary hearing, reasonable jurists would not debate that the jury's use of the dictionary did not adversely impact the verdict. Only two of the eleven jurors recall the use of the dictionary, and only one remembered it in any detail. (Dkt. No. 184 at 16–27.) That juror indicated it had only been used for 3 minutes, and that it "didn't make much difference at that point." *Id.* at 19. Santos attempts to weave together a narrative that shows the dictionary had an impact by pointing to contemporaneously spoiled verdict forms and the fact that they potentially looked up a word having to do with "collaboration, conspiracy, or collusion." However, the main issue at trial was whether a plan existed; the aiding and abetting issue was largely conceded at trial. (Dkt. No. 184 at 40–43.) Weighing the different facts of this case, reasonable jurists would not disagree with our determination that the jury's use of the dictionary did not impact the verdict.

5

### b. The Cook County judge's *ex parte* communications about the dictionary were not prejudicial

Santos also argues that the verdict may have been prejudiced by the judge's *ex parte* communication when delivering the dictionary. Santos correctly quotes our 2016 decision that "the communications . . . had the *potential* to influence the jury's deliberation and render the trial unfair" (emphasis added) but that is not enough. (Dkt. No. 198 at 24.) *Ex parte* communications can be harmless error. *See Rushen v. Spain*, 464 U.S. 114, 117–18, 104 S. Ct. 453, 455 (1983). Because the use of the dictionary itself was not prejudicial, it strains the imagination to see how the conversation accompanying the delivery of the dictionary was prejudicial. Santos has not made a sufficient showing that his constitutional rights were denied, and therefore the certificate of appealability is denied on this issue.

### 2. New claims related to other *ex parte* communications

Santos argues additional *ex parte* communications relate back to his original petition that alleged prejudice from the judge's communication with the jury regarding the dictionary. (Dkt. No. 198 at 26.) Outside of the dictionary discussions, he cites to *ex parte* communications regarding verdict forms, answering juror questions, and what can best be described as general catch-all *ex parte* communications. (Dkt. No. 198 at 26–28.) Santos argues these communications constituted an impermissible pattern, and that we incorrectly denied his motion to file an amended habeas corpus petition to include additional claims based on these facts. *Id.* A habeas corpus petition does not relate back when the facts in support of the motion "differ in both time and type from those the original pleading set forth." *Mayle v. Felix*, 545 U.S. 644, 650, 125 S. Ct. 2562, 2566 (2005). Simply because the new claim is based on events that occurred during the same trial as the original claim does not warrant invocation of the relation back doctrine. *See id.* at 662, 125 S. Ct. at 2573–74.

6

Turning specifically to Santos's argument that the *ex parte* communications discussing the verdict forms should be appended to the original petition, reasonable jurists would not debate that Santos should have included them in his original habeas petition. Santos learned about the jury request for new verdicts at the same time that he learned about the dictionary. (Dkt. No. 184 at 57.) He sought a new trial based in part on this communication yet failed to raise it in his direct appeal. *Id.* He also learned about jury's request for clarification of the verdict forms at trial. *Id.* As for the "other contacts" learned about during the evidentiary hearing, it would be antithesis to the finality that the Supreme Court's habeas corpus jurisprudence favors to allow a petitioner to add claims beyond the statute of limitations based on facts gleaned during the habeas corpus proceedings themselves.

Notwithstanding these procedural issues, Santos failed to show how these communications prejudiced him beyond a conclusory statement that they "undermine[] confidence in the fairness of the trial." (Dkt. No. 198 at 28.) He cites to a "failure to allow Petitioner to be present for all jury questions" and a "failure to make a proper record regarding all jury requests." (Dkt. No. 198 at 27–28.) He did not give any indication as to the content of these conversations to show how they prejudiced him. We are not convinced that reasonable jurists would come to a different conclusion or that the issues deserve encouragement to proceed further. Accordingly, the certificate of appealability is denied as to this issue.

### 3. *Brady* Claim

Santos also seeks to appeal our denial of his *Brady* claim. (Dkt. No. 198 at 29.) As we stated in our Order, in addition to showing that the prosecution withheld evidence that could be used to impeach witnesses at trial, a petitioner must also show the evidence was material, meaning the result would likely be different. *Santos I*, 2016 WL 7077104 at *9 (citing *Morgan*

*v. Hardy*, 662 F.3d 790, 800 (7th Cir. 2011) and *United States v. Bagley*, 473 U.S. 667, 682, 105 S. Ct. 3375, 3383 (1985)). Because only admissible evidence is material, *Jardine v. Dittman*, 658 F.3d 772, 777 (7th Cir. 2011), and the Illinois Appellate Court held that the evidence was inadmissible, it cannot be material. *Santos I*, 2016 WL 7077104 at *9. Even if it were admissible, the petition does not articulate how it would have changed the verdict considering the other evidence presented at trial. Given the evidence does not meet *Brady*'s materiality requirement, we decline to issue a certificate of appealability for this claim.

### B. Motion to Proceed *In Forma Pauperis* is denied with leave to refile

Although Santos filed his motion to proceed *in forma pauperis* in the proper court, he did not include the required information in the motion. The Federal Rules of Appellate Procedure however require certain financial details, a claim of entitlement to redress, and a statement of the issues presented on appeal. Fed. R. App. P. 24(a)(1). Santos only included a cursory statement about his financial situation and did not specific why he is entitled to redress or lay out the claims he intends to appeal. (Dkt. No. 205.) Because his motion lacked the information required by the Federal Rules of Appellate Procedure, it is denied with leave to refile.

### CONCLUSION

Accordingly, for the reasons above, Santos's motion with respect to a certificate of appealability is denied and his motion to proceed *in forma pauperis* is denied with leave to refile. It is so ordered.

_____
Honorable Marvin E. Aspen
United States District Judge

Dated: April 21, 2021